IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : |
| FEDERAL-MOGUL GLOBAL, INC., *et al.*, | : Chapter 11 |
| Debtors. | : Case No. 01-10578 (RTL) |
| | : Jointly Administered |
| FARLOC ARGENTINA, S.A., | : |
| Appellants, | : On Appeal from the United States Bankruptcy Court for the District of Delaware |
| v. | : |
| FEDERAL-MOGUL GLOBAL, INC., *et al.*, | : C.A. No. 04-1549 (JHR) |
| Appellees. | : |

**APPELLANT FARLOC ARGENTINA, S.A.'S
REPLY BRIEF**

Wilmington, Delaware
Date: August 1, 2005

BUCHANAN INGERSOLL, PC

By: David E. Wilks (Bar No. 2793)
    William D. Sullivan (Bar No. 2820)
    The Nemours Building
    1007 N. Orange Street, Suite 1110
    Wilmington, DE 19801
    Tel: (302) 428-5500
    Fax: (302) 428-3996

## TABLE OF CONTENTS

**Page**

INTRODUCTORY STATEMENT ..................................................................................1

ARGUMENT ...................................................................................................................3

    I. THE BANKRUPTCY COURT IMPROPERLY STATED AND APPLIED THE LEGAL STANDARD TO BE APPLIED TO DEBTORS' REJECTION MOTION..................................................................3

        A. The Debtors' burden of proof. ............................................................. 5

        B. The Bankruptcy Court's conflation of the business judgment rule and the business ......judgment standard to be applied in the § 365 context led to an erroneous conclusion................................................................................................ 7

    II. THE BANKRUPTCY COURT ERRONEOUSLY FAILED TO CONSIDER ANY EVIDENCE REGARDING THE DEBTORS' BURDEN TO ESTABLISH THAT THE REJECTION WAS IN THE BEST INTEREST OF THE ESTATE ..........................................................8

    III. THE FACTUAL RECORD DOES NOT SUPPORT A FINDING THAT REJECTION OF THE AGREEMENT IS IN THE BEST INTEREST OF THE ESTATE..............................................................11

CONCLUSION..............................................................................................................14

## TABLE OF AUTHORITIES

**Page**

**Cases**

In re Commercial Motor Freight, Inc. of Indiana,
  27 B.R. 293 (Bankr. D.Ind. 1983) .......................................................................... 5

In re HQ Global,
  290 B.R. 507 (Bankr. D.Del. 2001) ........................................................................ 6

In re Riodizio,
  204 B.R. 417 (Bankr. S.D.N.Y. 1997) .................................................................. 10

N.L.R.B. v. Bildisco,
  682 F.2d 72 (3d. Cir. 1982) .................................................................................... 5

**Statutes**

11 U.S.C. § 365 ..................................................................................................... passim

**Treatises**

R. Lord, 31 Williston on Contracts § 78:52 (4th ed., 2004) ........................................... 6

## **INTRODUCTORY STATEMENT**

For the many pages of argument that the parties have submitted, the issue presented in this appeal is extraordinarily simple: Did the Bankruptcy Court err when it relieved the Debtors of their undeniable burden of proof and instead placed the threshold burden of proof upon Farloc? Farloc has contended throughout these proceedings that well-established precedent requires the Debtors to establish through credible and non-speculative evidence that rejection of the executory contract at issue would benefit the estate. Indeed, the Debtors concede that such a showing is a mandatory "first step" in the evaluation of a debtor's rejection application. Nevertheless, Debtors here flee from the notion that they are bound by that requirement and instead co-opt the Bankruptcy Court's erroneous application of the business judgment rule before the required threshold showing has been made. Therefore, Farloc asks the Court here not to create new law or to construe facts. Farloc respectfully requests only that the Court hold the Debtors to their well-established burden of proof and remand this matter in order that the Bankruptcy Court may convene the more comprehensive hearing that the law requires.

The Debtors' argument urges a facile and convenient means of administering Chapter 11 proceedings such that bankruptcy courts need not bother themselves with the time-consuming business of adjudicating disputes. Under the Debtors' interpretation of § 365, the courts should cede to a debtor-in-possession the unfettered power to reject executory contracts and merely rubber-stamp any application unsupported by a meaningful *prima facie* factual demonstration that the estate will in fact benefit from the rejection. For these Debtors, even a burden as easy as this must apparently be lightened.

Specifically, the Debtors have acknowledged as they must that they were required

as a "first step" to prove that rejection of the Agreement would benefit their estate. Just as promptly, however, the Debtors then criticize Farloc for holding them to that proof. As a result, the Debtors have not meaningfully addressed the Bankruptcy Court's failure to consider evidence to support its ruling that rejection of the Farloc Agreement was in the best interest of the Debtors' estates.

The Bankruptcy Court erred as a matter of law by not requiring the Debtors to meet the threshold requirement for rejection of an executory contract under section 365(a): whether rejection would be beneficial to and in the best interest of the Debtors' estate. The Court undertook no fact finding on the economic impact rejection would have upon the Debtors and instead began and ended its inquiry on the sole question of whether Farloc proved that Debtors' decision to reject the Agreement was motivated by bad faith. Drawing that analysis from the jurisprudence of corporate law, the Bankruptcy Court erroneously eschewed the analytical framework required in a rejection motion under § 365.

The Bankruptcy Court failed to appreciate the fundamental difference between the application of the business judgment rule to corporate officers and directors outside of bankruptcy and the business judgment test applicable to the rejection of contracts under § 365 of the Bankruptcy Code. Indeed, the decisional law upon which the Bankruptcy Court relied and to which the Debtors persistently cling makes plain that a threshold showing is required of a debtor that is absent in the corporate law context. The business judgment rule in the corporate context is directed at the decision-making procedure -- whether the directors adequately informed themselves and avoided self-interest -- whereas the business judgment test under § 365 is, in the first instance, result-driven --

whether the rejection is beneficial to the debtors' estate.

In this case, the Bankruptcy Court erroneously failed to require the Debtors to support their bald assertion that the proposed rejection was in the best interest of the estate. Instead, the Bankruptcy Court approved Debtors' rejection of the Agreement on the grounds that Farloc failed to prove that the Debtors' management had acted in bad faith. By placing the burden of proof upon Farloc instead of upon the Debtors where it properly resides, the Bankruptcy Court committed an error of law and should be reversed.

## ARGUMENT

### I. THE BANKRUPTCY COURT IMPROPERLY STATED AND APPLIED THE LEGAL STANDARD TO BE APPLIED TO DEBTORS' REJECTION MOTION.

Farloc set forth in detail in its opening brief the body of authority that provides that an analysis under § 365 requires in the first instance a demonstration by the debtor that rejection of a particular executory contract is in the best interest of a debtor's estate. See Opening Brief at pg. 13-19. Only after that threshold burden is met, should the court engage in the consideration of the business judgment standard. In its answering brief, the Debtors pay lip service to that requirement but then echo the Bankruptcy Court's misapplication of the business judgment test in the context of a debtor's ability to reject an executory contract. At the November 9, 2004 hearing to consider the motion to reject, the Court stated:

> Lots of cases talk about deference to the business judgment of the debtor. In particular, Abbots Dairies talks about that. And so does In re Martin, in the context of approving settlement agreements. However, the Courts also speak about the Bankruptcy Court making findings that the contract should be accepted or rejected. And I think those, the language of those decisions misperceives the way the business judgment rule should operate. And misperceives the role of the Court and the management of the debtor.

November 9, 2004 Transcript at 57 (A0120). At the December 8, 2004 hearing to

3

consider Farloc's Motion to Stay Pending Appeal, the Court re-articulated its view of the business judgment standard as follows:

> I decided to apply the business judgment rule in this case, and in this context, in the same manner as is applied in corporate law, outside of bankruptcy. That is **by starting with the presumption that the decision taken by management is the product of proper business judgment**, in putting the burden of the objector to show that there is a reason to believe that the decision was not in good faith or not made in the best interest of the corporation, or as the Bankruptcy Court in Delaware had said, product of bad faith, caprice or whim.

December 8, 2004 Transcript at lines 1-10 (emphasis supplied).

That analytical framework from which the Bankruptcy Court approved the rejection is wholly inconsistent with well-established precedent in that it ignores Debtors' threshold burden of proving that rejection is in the best interest of the Debtors' estate. Try as the Debtors might to feign dismay or incomprehension of this fundamental premise of Farloc's appeal, they offer no explanation or remedy for their failure to satisfy their burden of proof. Instead, they simply ignore that the burden is theirs in hopes.

Specifically, the Debtors state "as the first step in the process of seeking to reject an executory contract, a debtor is required to make a showing as to why, in its business judgment, it believes rejection of the contract in question is beneficial to the debtor's estate." Ans. Br., at pg. 9. Having begun with a correct statement of the law, the Debtors follow that with an incorrect analysis of the business judgment standard. Under the Debtors' theory of the business judgment standard, a debtor's bald assertion that rejection is beneficial to the estate can only be challenged if an objecting party provides some proof that the debtors' assertion is the product of its management's bad faith or gross abuse of discretion. Ans. Br., pp. 12-14. In other words, there should never, in Debtors' view, be any examination of the threshold question of whether rejection would be

4

beneficial to a debtor's estate. It is self-evident that such a preposterous rule empowers debtors with the powers Congress has conferred upon the bankruptcy courts.

The more sensible rule -- and the one adopted in this Circuit -- provides that in order to be afforded the protections of the business judgment standard, the Debtors must show that the rejection actually does benefit the estate. In addition, when a challenge is made to the Debtor's assertion that rejection is beneficial, the requisite showing must be made at a hearing.[1] It is then, only after meeting its burden of demonstrating that rejection would benefit the estate, that the Debtors may benefit from the presumption that the decision was not made as a result of bad faith, whim or caprice.

### A.    The Debtors' burden of proof.

It cannot be disputed that the Debtors, as the moving parties, bear the burden of proof to demonstrate that rejection of the Agreement was in the best interest of the Debtors' estates. See In re Commercial Motor Freight, Inc. of Indiana, 27 B.R. 293, 296 (Bankr. D.Ind. 1983). Thus, while a debtor or trustee is entitled to the comfort provided by the presumptions inherent in the business judgment standard, it must first, as an absolute threshold matter, demonstrate that rejection would be in the best interest of the estate. N.L.R.B. v. Bildisco, 682 F.2d 72, 79 (3d. Cir. 1982) ["usual test for rejection of an executory contract is simply whether rejection would benefit the estate."] The Debtors' contention that they can rely merely on their assertions, without making the requisite showing at a hearing, is erroneous.

Though the Debtors ridicule Farloc's legal analysis and suggest that no authority

---

[1] While Debtors claim that rejection motions should only be adjudicated in summary fashion, Ans Br. At p. 17-18, the more sensible and compelling practice requires the consideration of evidence where the debtor's quantum of proof has been challenged. In re HQ Global Holdings, 290 B.R. 507 (Bankr. D. Del. 2001).

5

may be found to support Farloc's position, those *ad hominem* attacks simply ignore (and seek to distract the Court from) the fact that Farloc devoted several pages of its opening brief to a discussion of In re HQ Global Holdings, *supra,* a decision directly on point with this case. In HQ Global, the Court was faced with an objection to the proposed rejection of a contract and ***held a hearing*** on the economic reasonableness of the debtors' asserted business judgment. Opening Brief at pg. 19-20. That the Debtors' answering brief failed to address that decision is telling. As the Court noted in HQ Global, evaluating the proof of the benefit to the estate is the Bankruptcy Court's fundamental task in a § 365 analysis. HQ Global, 290 B.R. at 511 ("under the business judgment standard, the sole issue is whether rejection would benefit the estate"). See also R. Lord, 31 Williston on Contracts § 78:52 (4th ed., 2004) (in order to satisfy business judgment test, debtor must "establish that rejection of the contract will benefit the estate").

While the Court ultimately granted the debtor's motion to reject in HQ Global, the rejection was permitted only after a full evidentiary hearing was held on the merits of the motion, including specific factual findings that the rejection was in the best interest of the debtors' estates. One must necessarily conclude that the Debtors made no mention of HQ Global because the Debtors completely ignored their burden of showing that the rejection of the Agreement would be beneficial to the Debtors' estates. The Bankruptcy Court of course did not require them to do so and its conclusion must therefore be reversed. As discussed below, the record makes manifest that the Debtors will be unable to meet their burden on remand.

> B. **The Bankruptcy Court's conflation of the business judgment rule and the business judgment standard to be applied in the § 365 context led to an erroneous conclusion The Business Judgment Rule and the Business Judgment Standard are not Identical.**

The Debtors parse together selected passages from a variety of decisions in an attempt to show that the business judgment rule applied in the corporate context and the business judgment standard applied to the rejection of contracts are identical. Ans. Br., pp. 9-12. Even a cursory consideration of the two concepts, however, reveals the fallacy of that proposition. Under the business judgment rule, corporate management decisions are only subject to challenge where management has failed to inform itself appropriately or has acted with self-interest in the decision-making process. In contrast, the cases make clear that the "best interest of the estate" test is the hallmark of and starting point in a § 365 rejection analysis. As such, the Debtors' analysis is not sustainable.

For example, in <u>Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.</u>, 756 F.2d 1043 (4th Cir. 1985) -- a case the Debtors contend is supportive of their position -- the Court noted that while the corporate law and bankruptcy tests have similar origins, its application in the bankruptcy context requires the Court to make a fact-based determination on the merits:

> The issue thereby presented for first instance judicial determination by the bankruptcy court is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice. ***That issue is one of fact to be decided as such by the bankruptcy court by the normal processes of fact adjudication.*** And the resulting fact determination by the bankruptcy court is perforce then reviewable up the line under the clearly erroneous standard.

<u>Lubrizol,</u> at 1047 (emphasis supplied). The <u>Lubrizol</u> Court went on to analyze the evidence presented with respect to the impact of rejection on both the debtor and

7

the objecting creditor. <u>Lubrizol</u> at 1047. That process was notably and erroneously absent from the Bankruptcy Court's consideration in this case.

The same principle is set forth <u>In re Sandman Associates, LLC</u>, 251 B.R. 473 (W.D. Va. 2000), another case upon which the Debtors rely. Ans. Br., p. 11. That decision states, "In determining whether the decision to reject was based on sound business judgment, the bankruptcy court acts in its fact-finding role, and its decision is reviewable under the clearly erroneous standard, rather than *de novo*." <u>Sandman</u> at 481-482.[2]

Accordingly, the Debtors have failed to refute the that the Bankruptcy Court is charged with making the factual determination of whether the proposed rejection of a contract would be in the best interest of the estate. That inquiry was absent from the Bankruptcy Court's determination. Accordingly, the Bankruptcy Court's decision was erroneous as a matter of law.

## II. THE BANKRUPTCY COURT ERRONEOUSLY FAILED TO CONSIDER ANY EVIDENCE REGARDING THE DEBTORS' BURDEN TO ESTABLISH THAT THE REJECTION WAS IN THE BEST INTEREST OF THE ESTATE.

Based on the flawed interpretation and application of the business judgment standard it adopted, the Court refused to consider any evidence regarding the Debtors' basic obligations and burden to demonstrate that the rejection of the Agreement was beneficial and in the best interest of the Debtors estates. <u>See</u> Opening Brief at pg. 21-23 discussing the illusory benefits of the rejection to the Debtors' estates. At the November 9, 2005 hearing, the Bankruptcy Court concluded:

8

> In this case there's nothing that the objector has presented which would leave the Court to conclude that there was any bad faith or any breach of the duty of loyalty on behalf of the management of the debtor. Nor is there any demonstration that the management of the debtor failed to properly educate itself regarding the decision to reject this executory contract.

November 9, 2004 Transcript at 57, (A0121).

While the Debtors find this statement compelling justification for approving the Bankruptcy Court's decision, see Response at pg. 20, it in truth makes clear that the Court engaged in absolutely no fact-finding regarding the threshold matter of whether the rejection was in the best interest of the Debtors' estates. The Bankruptcy Court approved the rejection solely on the basis that Farloc had not alleged bad faith or a breach of fiduciary duty by the Debtors' management, issues which would be relevant to an analysis under the business judgment rule in the corporate context but which are unrelated to the threshold best interest of the estate analysis.

Further, in commenting on Farloc's arguments on the issue of whether there was a proper exercise of business judgment, the Court stated, "That's, as I said, an argument that management has made a bad decision. It's not an argument that management has breached any kind of duty which would overrule the presumption that management has exercised its proper business judgment." See Transcript of November 9, 2004 hearing at 58 (A0121). This statement alone demonstrates that the Bankruptcy Court erroneously failed to analyze whether the rejection was in the best interest of the Debtors' estates. As previously noted, it is only *after* such a showing is made that the Debtors are permitted the presumptions inherent in the business judgment standard.

---

[2] In re Bicoastal Corp., 125 B.R. 658 (M.D. Fla. 1991), another decision referenced by Debtors for this proposition only references the business judgment test in *dicta* and was not decided in the § 365 context.

9

The Debtors' Answering Brief attempt to distract the Court from the issues by distorting Farloc's contentions. The Debtors contend that (1) Farloc's Opening Brief does not provide guidance as to how the Court should evaluate the proposed rejection, and (2) as a practical matter, the bankruptcy court could not conduct a detailed inquiry into every proposed contract rejection. Ans. Br., pp. 16-18. Neither contention is faithful to the facts.

With respect to the standards by which a bankruptcy court should evaluate the merits of a proposed rejection, numerous courts have set forth the factors which should be considered. For example, in applying the business judgment test to determine whether the rejection of a stock option and shareholder agreement should be rejected, the Court in In re Riodizio, 204 B.R. 417, 425 (Bankr. S.D.N.Y. 1997), set forth a non-exclusive list of considerations including (1) the contract is uneconomical to complete according to its terms; (2) the contract is financially burdensome to the estate; (3) rejection will make the debtor more attractive to a prospective purchaser or investor; (4) rejection will result in a large claim against the estate; and (5) in the case of a stock option contract, the debtor can market the shares and receive a higher or better price than the option offers. Given the wide variety of contracts subject to rejection under section 365, there is undoubtedly no "one size fits all" analysis. However, it is clear that a factual determination must be made to determine whether the proposed rejection is beneficial to the estate. It is that framework that courts throughout the Third Circuit and across the country employ in contested rejection motions. Farloc urges neither more nor less from the Court here.

Debtors' second contention -- that no bankruptcy court can practically engage in the evaluation of debtors' burdens of proof -- suggests that bankruptcy courts are unable

10

to perform the function for which they were created. Farloc respectfully submits that it is neither beyond the ken nor the diligence of any member of the bankruptcy court judiciary to determine whether a debtor has adequately established that rejection of an executory contract is in the best interest of the debtor's estate. The Debtors' argument to the contrary is unworthy of further discussion.

### III. THE FACTUAL RECORD DOES NOT SUPPORT A FINDING THAT REJECTION OF THE AGREEMENT IS IN THE BEST INTEREST OF THE ESTATE.

The Bankruptcy Court's failure to conduct a hearing and make a factual determination that rejection of the Agreement would be beneficial to the estate by itself is grounds for reversal. Moreover, had a factual inquiry been conducted, the facts presented would establish that rejection of the Agreement would result in a loss of net income to the estate and result in sizable claims against the estate with absolutely no resulting benefit, while maintenance of the Agreement costs the estate nothing. See Op. Br., pp. 20-22.

Debtors' suggestions to the contrary are without merit. First, the Debtors contend that, notwithstanding the clear statements by the Bankruptcy Court in the referenced transcript, the Bankruptcy Court did in fact appropriately weigh the evidence submitted by the parties. Ans. Br., pp.19-20. This curious argument flatly ignores the stated basis for the Bankruptcy Court's decision. While the Bankruptcy Court heard oral argument from counsel, not factual record was developed. In the Bankruptcy Court's view, no facts were needed to support the Debtors' application, since the Bankruptcy Court "started" from the premise that the business judgment test was the first order of business. See November 9, 2004 Transcript at 57-58 (A0120-A0121). In the absence of any factual record challenged by vigorous cross examination, the Bankruptcy Court's

11

decision is, on its face, contrary to law and clearly erroneous.

The Debtors next suggest that were a factual record developed, they would have established that rejection would benefit the estate. While the Debtors strive mightily to demean the returns they receive from the Agreement -- at no cost to the estate -- there is no dispute that the estate realizes a positive economic benefit from the Agreement. Conversely, the Debtors have not identified a single means of extracting from the licenses at issue reliable economic performance for the estate. The Debtors instead offer amorphous and hopeful platitudes that their "business plan" will somehow create revenues not currently realized through their Agreement with Farloc. It is therefore simply impossible to conclude from the record before the Bankruptcy Court that rejection of the Agreement would benefit the estate. Moreover, the Debtors ignore the crucial fact that they are shareholders in Farloc and therefore benefit from both sides of the Agreement. Accordingly, rejection of the Agreement would have a catastrophic effect on the value of the Debtors' own equity stake in Farloc. Properly evaluated, both on a pure cash flow basis and as a valuation of the Debtors' holdings, rejection would plainly harm the estate.

Likewise -- and contrary to the debtors contentions -- the Agreement does not serve to inhibit the unspecific and unexplained business plans to which the Debtors have referred. As noted in Farloc's opening brief, there are two separate licenses under the Agreement: (1) a non-exclusive trademark license by which Farloc sells product under the Debtors' Wagner trade name; and (2) an exclusive technology license by which Farloc uses the Debtors' technology to make brake fluid and brake systems. Under well-settled bankruptcy law, the Debtors are free to license the non-exclusive trademark rights to any

other party and the Debtors offer no evidence that rejection of the non-exclusive rights with Farloc would benefit the estate in any manner whatsoever.

With respect to the exclusive license, the burdens under which the Debtors claim to labor are purely illusory. First, the Debtors assert that it is a burden for one of its major competitors to have access to their licensed technology. Ans. Br., p. 24. Yet the Debtors fail to acknowledge their own equity stake in Farloc. Their "competition" argument thus rings hollow upon revelation that that they have in fact for many years been in business with the very competitor they claim to fear. Moreover, the Debtors were well aware when they presented their rejection motion that Dana Corporation had agreed to sell its aftermarket business of which its share of Farloc is a part. That transaction has since closed and the Debtors' stated fears -- always dubious -- have been definitively proven fallacious.

Furthermore, Farloc will enjoy section 365(n) rights with respect to the exclusive technology license, a point that the Debtors concede. Ans. Br., p. 25. While the Debtors woefully understate the value of Farloc's 365(n) rights, the important factual consideration is that Farloc will retain the right to use the technology at issue under the exclusive license portion of the agreement. The Debtors have identified no countervailing benefit which offsets the liability for rejection damages added to the loss of free cash flow and their steeply devalued equity interest in Farloc.

It seems plain, therefore, that rejection of the Agreement would confer no benefit on the estate and in fact would have a deleterious effect. This Court, of course, need not make that factual determination. That analysis must occur, in the first instance, in the Bankruptcy Court after a fair hearing at which the Debtors' contentions are subjected to

13

cross examination and a meaningful record may be developed. Only after that exercise is completed may the Bankruptcy Court properly consider whether the Debtors have met their threshold burden of proof. Since the Bankruptcy Court failed to engage in that process -- and employed an inappropriate and inadequate legal standard -- its decision is manifestly erroneous and should be reversed.

## CONCLUSION

Since the Bankruptcy Court applied a fatally flawed legal standard and decided the Debtors' rejection motion on an inadequate record, Farloc respectfully submits that its decision is clearly erroneous. Farloc therefore respectfully requests that the Court vacate the Bankruptcy Court's order and remand this matter for further proceedings.

Wilmington, Delaware
Date: August 1, 2005

Respectfully Submitted,

BUCHANAN INGERSOLL PC


/s/ David E. Wilks
David E. Wilks (Bar No. 2793)
William D. Sullivan (Bar No. 2820)
The Nemours Building
1007 N. Orange Street, Suite 1101
Wilmington, DE 19801
Tel: (302) 428-5500

*Counsel to Farloc Argentina, S.A.*