<u>NOT FOR PUBLICATION</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FARLOC ARGENTINA, S.A. | : | Hon. Joseph H. Rodriguez |
| Appellant, | : | Civil Action No. 04-1549 |
| v. | : | |
| | : | On Appeal from an Order of the |
| FEDERAL-MOGUL GLOBAL INC., | : | United States Bankruptcy Court |
| T&N LIMITED, *et al.*, | : | for the District of Delaware in |
| | : | Bankruptcy Case No. 01-10578 |
| Appellees. | : | |
| _____: | | **OPINION** |

This matter comes before the Court on Appeal from the United States Bankruptcy Court for the District of Delaware's (the "Bankruptcy Court") Order of November 17, 2004 (the "Rejection Order") [DI 6373], which granted Debtors' Motion for Order Approving and Authorizing Rejection of Licensing Agreement with Farloc Argentina S.A. On November 24, 2004, Farloc filed a Notice of Appeal. For the reasons discussed herein, the Court will affirm the Bankruptcy Court's Order of November 17, 2004.

### I. Procedural and Factual Background

On October 1, 2004, the Debtors in the above captioned bankruptcy cases filed a Motion for Order Approving and Authorizing Rejection of Licensing Agreement with Farloc Argentina S.A. ("Farloc") with the Bankruptcy Court. On November 9, 2004 the Bankruptcy Court conducted a hearing and announced that the Debtors' requested relief would be granted and the leasing agreement would be rejected. On November 17, 2004,

the Bankruptcy Court entered its Rejection Order, which is the subject of this appeal.

Farloc is an automotive braking systems manufacturer and distributor that is incorporated and conducts business in Buenos Aires, Argentina. (App. Br. ¶ 12.) The sole shareholders of Farloc were Debtors, who own 24% of Farloc's stock, and Dana Argentina S.A, who was the majority shareholder (A0004).[1] Notably, Dana Argentina is a subsidiary of Dana Corporation, which is a competitor of Debtors, particularly in the aftermarket sales of brake systems and brake fluid. (Id.) Debtors and Farloc were parties to a 50-year old licensing agreement (the "Agreement), which is the subject of the Rejection Order.

The Agreement, as amended, provided Farloc with: (1) a non-exclusive right to use the Wagner mark for brake products within Argentina; and (2) exclusive rights to manufacture, distribute and sell products based on Wagner brake technology. (Id. ¶ 13.) Farloc states that the trademark license component of the Agreement does not prevent Debtors from using the Wagner mark themselves, or from giving these rights to a third party. (A0020-A0021.) Moreover, Farloc states that the exclusive technology license rights under the Agreement will likely remain in effect for a period of considerable duration due to the considerations under section 365(n).[2] In consideration of the licenses,

---

[1] Cites to the Appendix of the Opening Brief will be annotated by A_____.

[2] The Bankruptcy Code provides certain protections for licensees of technology. Section 365(n) provides that:
  "[i]f a trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect" to either terminate the contract or retain certain rights under the license.

the Debtors receive a 2% royalty on all applicable sales.  Debtor states that the royalties have been minimal totaling $49,991 in 2002 and $27,000 in 2003.  (Appellee Br. at 4.) The Agreement has been amended several times and the most recent amendments occurred in 2002, which afforded Debtors, at no additional cost, a new stream of royalties on Farloc's sale of non-Wagner trademark brake fluid.  (App. 4.)  If, however, the Rejection Order is affirmed on this appeal, Farloc would be permitted to continue making those sales without any royalty obligations   (Id.)

     Farloc currently enjoys a 50% share of the Argentine brake fluid market with 2003 sales in excess of $2.5 million as of 2003.  Farloc states that its market leader position is driven by Dana Corporation's distribution channels and the Wagner trade name.  (Appellant Br. at 9.)  If the Agreement is rejected, Farloc contends that Debtors will be left with a trade name and no Argentine distribution system to distribute the products.  Thus, Farloc believes that Debtors will have to invest capital to develop the robust distribution channels that Farloc currently enjoys.  (Id.)  Debtors, however, assert that it is imprudent that one of its major competitors, Dana Corporation, has control over its Wagner, and other trademarks and technology.  (Appellee Br. at 4.)  This argument, however, has less sustenance now because Dana Corp. has since sold its share in the Farloc business to a third party.  (Id. at n.2.)  This fact is nonetheless relevant in considering Debtors' reasons for the rejection at the time.  In addition, Farloc states that

---

11 U.S.C. 365(n).  See  Schlumberger Res. Mgmt. Servs. v. CellNet Data Sys. (In re CellNet), 327 F.3d 242 (3d Cir. 2003).

the minimal royalties under the Agreement do not justify the broad rights granted to Farloc; especially, the exclusive rights that inhibit the Debtors from expanding elsewhere in South America. (Id. at 4.)

## II. Jurisdiction and Appellate Review

Jurisdiction to hear this appeal exists pursuant to 28 U.S.C. § 158(a)(1), as the Rejection Order was a final order of the Bankruptcy Court. In reviewing the decisions of a bankruptcy court, a district court applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component. In re Woskob, 305 F.3d 177, 181 (3d Cir. 2002); Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992). Upon a determination that the bankruptcy court's factual findings are not clearly erroneous, the district court must examine whether the factual findings are legally sufficient to support the bankruptcy court's conclusions of law. See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102 (3d Cir. 1981).

The Appellants argue that the Bankruptcy Court erred as a matter of law because it failed to apply the correct legal standard in granting Debtor's motion to reject an executory contract under 11 U.S.C. § 365(a). Second, Farloc argues that the Bankruptcy Court erred in weighing the evidence under the business judgment standard under section 365. Therefore, whether the Bankruptcy Court applied the business judgment standard correctly will be reviewed *de novo*. The Bankruptcy Court's factual determinations as it relates to whether the Debtors' rejection of the Licensing Agreement was proper will be

reviewed under a clearly erroneous standard.

### III.  Analysis

**A.    Application of the Section 365 business judgment test.**

Farloc appeals the Bankruptcy Court's application of the business judgment test under section 365 when it considered Debtors' Rejection Motion.  Farloc raises two interrelated issues: (1) did the Bankruptcy Court err in applying the well known business judgment rule to its analysis of the Rejection Motion[3]; and, (2) did the Bankruptcy Court err in not considering whether the Debtors' rejection was made under "bad faith, whim or caprice."

In general, motions to reject executory contracts are evaluated under the business judgment test.  Section 365 does not set forth a test for determining when rejection of an executory contract is permissible.  As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction.  See, e.g., In Re Martin, 91 F.3d 389, 396 (3d Cir. 1996) (citing In Re Schipper, 933 F.2d 513, 515 (7th Cir. 1991)); In Re Abbott Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986).  The business judgment test dictates that a court should approve a debtor's decision to reject a contract

---

[3] Semantics are important here.  The "business judgment test" will refer to the term set forth in the Bankruptcy Code and established by the courts in rejection analysis.  The "business judgment rule" is the well-known standard that is commonly used in the judicial review of corporate decision making.  The business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an "informed basis, in a good faith and honest belief that the action was in the best interests of the company."  Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985).

unless that decision is the product of bad faith or a gross abuse of discretion. Computer Sales Int'l, Inc. v. Federal-Mogul Global Inc., 293 B.R. 124, 126 (Bankr. D. Del. 2003) (citation omitted). The Third Circuit has not spoken to which, if any, additional factors should be considered by a court considering a motion to reject. After a review of other circuit law, the Computer Sales Int'l court determined that a demonstration of "severe hardship or burden" to the debtor's estate was not a necessary prerequisite for rejection analysis. Id. at 127. Rather, the sole inquiry is whether the presumption that the decision was made in good faith was overcome.

Appellant relies upon the pre-Computer Sales case, In re HQ Global Holdings, Inc., 290 B.R. 507 (Bankr. D. Del. 2003), to support its argument that the Bankruptcy Court employed the wrong standard. Chief Judge Walrath applied a different standard from Computer Sales, and determined that under the business judgment standard, "the sole issue is whether the rejection benefits the estate." Id. at. 511 (citing N.L.R.B. v. Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982) (the "usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test"), aff'd 465 U.S. 513 (1984)). The Computer Sales Int'l court considered the In re Bildisco ruling; yet, it focused on the Court's language which articulated some of the unique concerns of the federal labor laws:

> [t]hat because of the special nature of a collective-bargaining contract . . . a somewhat stricter standard should govern the decision of the Bankruptcy Court to allow rejection of a collective-bargaining agreement.

Id. at 524. Thus, Judge Wolin concluded that the In re Bildisco Court was confronted

with a collective bargaining agreement, a very different type of executory contract from the equipment leases at issue here. Computer Sales Int'l, 293 B.R. at 126. There is further support for the Computer Sales Int'l rule because the Supreme Court stated that, "The standard which we think Congress intended is a higher one [for rejection of a collective bargaining agreement] than that of the 'business judgment' rule." In re Bildisco, 465 U.S. at 526. Therefore, the business judgment rule set forth in Computer Sales Int'l is the preferable rule over the more stringent test enunciated in In re Bildisco, and applied in In re HQ Global Holdings, Inc., because a collective bargaining agreement is not the type of executory contract at issue here.

Under the business judgment test, a debtor is required to proffer a reason whether or not in its business judgment, rejection of the executory contract at issue benefits the estate, and then articulate the bases for that determination. In re Sharon Steel Corp., 872 F.2d 36 (3d Cir. 1989). The Bankruptcy Court correctly applied the presumption inherent in the business judgment rule when it considered the Rejection Motion and held:

> [B]usiness decisions are made by disinterested and independent directors on an informed basis, and with the good faith belief that the decisions will serve the best interest of the corporation. If the presumption has not been overcome, then the business judgment rule prohibits the Court from going further in examining the merits of the underlying business decision, and prevents a fact finder, in hindsight, from second guessing the decisions of the directors.

(12/9/04 Hn'g Tr. at 20 (A0200)). Contrary to Farloc's argument, Judge Lyons did not base his decision on the duty of care and duty of loyalty aspects of the business judgment rule. It is undisputed that breaches of duty aspects of the business judgment rule are not

at issue here; therefore, the fact that Judge Lyon's mentions these aspects of the rule in the same breath as the presumption language does not mean that Judge Lyons applied the incorrect legal standard. It is the presumption that a decision was made in good faith that is the critical issue here. A fair reading of the Hearing transcript indicates that Judge Lyon's did not confuse breach of duty analysis with whether the Debtors reached its decision to reject the Agreement in good faith.

Once the debtor meets its burden, the *non debtor party bears the burden* of proving that the debtor's decision derives from "bad faith, whim or caprice." See In re Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001); In re Wheeling-Pittsburgh Steel Corp., 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987). Farloc contends that the Bankruptcy Court did not conduct any "bad faith, whim, or caprice" analysis. This standard is distinct from the "hardship to the estate" considerations that were at the heart of the HQ Global decision. Most important to this Court's review is the recognition that this analysis is not automatic; rather, the non-debtor has the burden of proving it. Thus, if no facts were presented to the Bankruptcy Court to support an allegation of "bad faith, whim, or caprice," it cannot be said that Bankruptcy Court erred under section 365 by not initiating their discovery.

Therefore, after conducting a *de novo* review of the controlling case law and the Appellate record, it is held that the Bankruptcy Court was correct in applying the standard set forth in In re Sharon Steel Corp. as the proper test in considering a rejection of a licensing agreement under section 365(a). In addition, the Bankruptcy Court did not err

in by not conducting a bad faith inquiry because, as indicated below, the facts giving rise to such an inquiry were not on the record.

### B.  The Bankruptcy Court's factual determinations

Farloc argues that the Bankruptcy Court failed to consider relevant arguments and evidence in its application of an incorrect legal standard in its review of the Rejection Motion.  Because it was determined in Part A, infra, that the Bankruptcy Court did apply the correct legal standard, the inquiry here will be limited to: (1) whether the Bankruptcy Court's factual determinations as to the business judgment test were clearly erroneous; and, (2) whether the Bankruptcy Court was presented with, and considered facts, that supports Farloc's argument that rejection of the leasing agreement was subject to "bad faith, whim, or caprice."  The second issue can be dismissed because Farloc admits that there was no bad faith.  (See A0117.)  In addition, Judge Lyons held that none of Farloc's submissions indicate that there was any bad faith.  (A0120.)  Because Farloc did not meet its burden, the Bankruptcy Court did not err in not specifically addressing the "bad faith, whim, or caprice" standard.

Farloc presented facts to the Bankruptcy Court that set forth the general terms of the licensing agreement.  (See A0117-A0119.)  Farloc argued that because Debtors have not presented an alternative licensing agreement, that would presumably be more advantageous to the Debtors than the Farloc agreement, the Debtors' have exercised no business judgment at all.  (A0118.)  Judge Lyons, however, observed that Farloc did not present evidence that Debtors' did not properly educate itself in its decision to reject the

-9-

agreement.  (A0121.)  Most importantly, the Bankruptcy Court correctly observed that even if this is a bad business decision, it is not enough to rebut the presumption that Debtor's management exercised its proper business judgment.  (Id.)

Admittedly, the December 9, 2004 Hearing does not add tremendous insight into the facts considered by the Bankruptcy Court; however, the papers submitted to the Bankruptcy Court provide a sufficient basis for rejecting the Agreement.  Also, it is equally apparent that Farloc offered no evidence that would shake the rebuttable presumption that the decision was made in good faith.  The papers submitted to the Bankruptcy Court, including the Declaration of Charles H. Polzin, Associate General Counsel of Federal-Mogul Corporation (the "Polzin Declaration"), demonstrate that the rejection was not only made in good faith, but also that the *de minimis* royalties that Debtors received from the Licensing Agreement did not justify the broad rights granted to Farloc under the Agreement.  Thus, Debtors state that the Agreement effectively prevents, or at least inhibits, the Debtors from availing themselves of other, potentially lucrative business opportunities in South America.  (Rejection Motion at ¶ 8; Polzin Dec. ¶ 4.)  At the time the Debtors moved for rejection, Dana Argentina was a major competitor of Debtors in the aftermarket sales of brake systems and brake fluid.  (Rejection Motion ¶ 8; Polzin Dec. ¶ 5.)  Thus, Debtors concluded that it was imprudent that one of their major competitors could have access to its Wagner trademarks and other technologies.  (See id.)  For these reasons, Debtors' urged the Bankruptcy Court to reject the Licensing Agreement because it served the best interest of Debtors' and their estates.  (See Rejection Motion ¶ 8; Polzin Dec. ¶ 6.)

Appellant cites the case of In re Monarch Tool & Mfg. Co., 114 B.R. 134 for the proposition that the Bankruptcy Court should also consider the licensee's plight in light of the rejection. Notwithstanding the fact that the case is non-controlling, In re Monarch Tool is the only case cited by Appellants where the court did not allow the debtor to reject an executory lease. There, the court went beyond the liberal application of the business judgment test and considered the disproportionate damage to the other, non-debtor party to the contract. The Court does not find In re Monarch Tool persuasive because it is inapposite to the primary focus the section 365 analysis; that is, the protection of the debtor and the preservation of its estates. Therefore, the facts relating to the effects this rejection will have on Farloc were properly not considered by the Bankruptcy Court and will not be considered here.

The crux of Farloc's appeal is that Debtors' purported counterveiling benefits in rejecting the Licensing Agreement were illusory. (Appellant Br. at 22.) It is not the duty of the Court to weigh the *de minimis*, low cost, benefit that the Debtors previously enjoyed under the Licensing Agreement, with the unknown risk or benefit Debtors face after rejection. Nor would it be appropriate to give more credence to Farloc's facts supporting what it considers to be the better business judgment; namely, keeping the Agreement in place. Once the facts supporting the good-faith presumption have been satisfied, it is not necessary for the Court to engage in a fact-finding odyssey and determine the best business decision.

The fact finding of the Bankruptcy Court in entering the Rejection Order was not clearly erroneous. There is no evidence to support an alternative conclusion that Debtors

-11-

did not engage in good faith decision making, or that their reasons for rejection lack merit. After review of the entire record, the Court is not left with a definite and firm conviction that a mistake has been made, which would render the factual findings of the Bankruptcy Court clearly erroneous. See U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948); In re Cellnet Data Sys. Inc., 327 F.3d 242, 244 (3d Cir. 2003).

## VI.  Conclusion

For the foregoing reasons, the Court will affirm the United States Bankruptcy Court for the District of Delaware's Order of November 17, 2004. An appropriate Order will be entered.

    /S/ Joseph H. Rodriguez
    JOSEPH H. RODRIGUEZ
    United States District Judge

Dated: August 2, 2005_____